# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **CEDRIC D. BURROUGHS, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) **Case No.: 1:08-CV-1239-VEH** |
| | ) |
| **HONDA MANUFACTURING OF ALABAMA, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

This action is brought under § 216(b) of the Fair Labor Standards Act ("FLSA") by Plaintiffs Cedric D. Burroughs ("Burroughs"), Angela Blake ("Blake"), and Eddie D. Caldwell ("Caldwell") against Defendant Honda Manufacturing of Alabama, LLC ("Honda") and was initiated on July 14, 2008. (*See generally* Docs. 1, 56). In their second amended complaint, Plaintiffs maintain that they and other similarly situated current and former production employees of Honda have been unfairly compensated under the FLSA at its automobile manufacturing plants located in Lincoln, Alabama. (Doc. 56 ¶ 2). More specifically, Plaintiffs complain that Honda "uniformly denies overtime premium pay to its employees by requiring 'non-

exempt' employees to work off the clock before their shift start and while on their unpaid meal break." (*Id.* ¶ 3). The complaint includes one count brought individually and on behalf of the members of the purported collective action for redressing the alleged "uniform and company wide compensation policy and practice, in violation of the FLSA." (*Id.* ¶ 31).

Pending before the court is Plaintiffs' Motion for an Order Conditionally Certifying Class and Permitting Court Supervised Notice to Employees of Their Opt-In Rights and Incorporated Memorandum of Law (Doc. 62) (the "Notice Motion")[1] filed on January 6, 2009. Plaintiffs seek to send notice of the action to "[a]ll current and former hourly paid production employees: 1) working more than 40 hours in any week in the last three years, 2) working day or night shift and/or 3) manufacturing vehicles in Building 1 or Building 2 at Defendant's Lincoln Alabama facility." (Doc.

---

[1] 29 U.S.C. § 216(b) authorizes employees to bring collective pay actions "in behalf of . . . themselves and other employees similarly situated" who file notices of consent to join or opt-in to the suit. The Notice Motion includes declarations from Plaintiffs Burroughs and Caldwell and thirty-four other potential opt-in plaintiffs. (Doc. 62 at Exs. 1-36). With respect to these declarations, thirty-two are Assembly Frame associates, including Plaintiffs Burroughs and Caldwell (Doc. 62 at Exs. 1-7, 9-21, 22-23, 35); two are Paint associates (*Id.* at Exs. 22, 34); one is a Production Material Control or "PMC" associate (*Id.* at Ex. 8); and one does not indicate his position beyond that of "associate." (*Id.* at Ex. 36).

62 at Ex. A at 1).[2]

Honda filed its opposition (Doc. 64) to the Notice Motion on January 26, 2009. Plaintiffs filed their reply (Doc. 66) on February 13, 2009.

After consideration of the Notice Motion, the related briefs and evidence, and for the reasons set forth hereinafter, Plaintiffs' Notice Motion is **GRANTED**. The court will certify a FLSA collective action as described more specifically below.

## II. ANALYSIS

### A. Legal Background

Section 216(b) of the FLSA provides that:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

This court uses the "two-step" approach to § 216(b) certification adopted by

---

[2] As Plaintiffs have further clarified the proposed class definition in their reply, they "do not seek to represent Equipment Service Associates, Team Coordinators and or Process Associates who work the three (3) shift rotation in Die Cast, Stamping, Paint/Injection Mold, or Machining" or "non-exempt clerical employees working within Defendant's plant." (Doc. 66 ¶ 4). Instead, "Plaintiffs seek to represent only those non-exempt, day and night shift Process Associates who at any point in the last three (3) years worked in Assembly Frame, Engine Assembly, Paint, PMC, Weld, and Vehicle Quality." (*Id.* ¶ 5 (emphasis in original omitted)).

3

several other courts. First, the court determines whether a collective action should be certified for notice purposes. Then, after discovery is completed and the case is ready for trial, the court revisits the issue of certification. Therefore, certification, if granted at the preliminary stage, <u>is always conditional</u>.

In making the initial decision regarding certification, the court must consider whether it will serve the purposes and putative benefits of a collective action under § 216. The Supreme Court has identified the main benefits of a collective action under § 216(b):

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). Accordingly, the court must balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing the case to proceed collectively. *Bayles v. American Medical Response of Colorado, Inc.,* 950 F. Supp. 1053, 1067 (D. Colo. 1996).

A court's decision to authorize the sending of notice to potential class members in collective actions brought under § 216(b) is discretionary in nature. *Haynes v. Singer Co.*, 696 F.2d 884, 888 (11th Cir. 1983) ("Surely, there was no abuse of

discretion on the part of the trial court; or to put it another way, we are not left with the impression that any mistake has been committed.") (footnote omitted); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, <u>remains soundly within the discretion</u> of the district court.") (emphasis added).

Under the applicable collective action legal principles, this court must "satisfy itself that there are other employees of [Honda] who desire to 'opt in' and who are 'similarly situated' [to Plaintiffs] with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim that collective action status is appropriate. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citation omitted).

**B.   Application**

    **1.   Opt-In Interest Requirement**

Turning to the first requirement, Plaintiffs proffer as supporting evidence of a sufficient interest in the litigation the declarations noted above and the executed consents to join suit "from the named plaintiffs, as well as [from the] <u>eight hundred and thirty-six</u> opt-in plaintiffs[.]" (Doc. 62 ¶ 11 (emphasis added)); (Doc. 5 at Ex. A

at 1-3 (sworn consents from named plaintiffs)); (Docs. 6- 7, 9-10, 13-19, 24-33, 39, 41-43, 46, 51, 58, 60-61(sworn consents from opt-in plaintiffs filed prior to date of Notice Motion)); (Docs. 63, 65 (sworn consents from opt-in plaintiffs filed after Notice Motion)).

The foregoing record of consents establishes more than a mere expectation that other employees would be interested in joining the collective action proposed by Plaintiffs. Indeed, this court, like others, has conditionally certified collective actions with a far smaller number of potential opt-ins' having shown an interest in joining the litigation. *See, e.g.*, *Cross v. Noland Health Services, Inc.*, No. 4:08-CV-0067-VEH, (Doc. 30 at 3 n.2, 16) (N.D. Ala. Feb. 17, 2009) (finding sufficient interest requirement met at stage one on the basis of declarations provided by ten potential opt-in plaintiffs and twelve executed consents); *Coleman v. Buffalo Rock Company*, No. 2:07-CV-0915-VEH, (Doc. 117 at 12-13) (N.D. Ala. Mar. 19, 2009) (finding sufficient interest requirement met at stage one on the basis of nine executed consents in addition to those executed by named plaintiffs).

Honda challenges neither the content nor the authenticity of any of these consent and/or declaration documents. Moreover, Honda has not offered any contrary evidence of production employees who have expressed a <u>lack</u> of interest in the proposed class. *Cf. Saxton v. Title Max of Alabama, Inc.*, 431 F. Supp. 2d 1185,

1187-88 (N.D. Ala. 2006) (denying conditional certification in part on the basis of "substantial [competing] evidence, including 158 affidavits . . . indicating that members of a potential opt-in class likely have no interest in opting in to this lawsuit.") (footnote and citation omitted).

In fact, in its significant silence,[3] Honda's brief really abandons (or alternatively concedes) the issue of whether Plaintiffs have adequately met the opt-in interest requirement at the conditional certification level.[4] Therefore, for all these reasons, Plaintiffs have established a reasonable basis for the court to conclude that an interest to opt-in exists as to the proposed collective action of day and night shift production employees at Honda's Anniston facility.

### b. Substantially Similar Requirement

As for the second part, the court reads *Dybach* to require a comparison of the pool of potential opt-in candidates with Plaintiffs to see if their job requirements and

---

[3] *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)). "[T]he onus is upon the parties to formulate arguments[.]" *Dunmar*, 43 F.3d at 599 (citation omitted).

[4] Honda's brief focuses exclusively upon the substantially similar requirement.

pay provisions are substantially similar. *See also Grayson*, 79 F.3d at 1096 ("[P]laintiffs need show only 'that their positions are similar, not identical,' to the positions held by the putative class members.") (citation omitted). Moreover, "the burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity." *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003).

However, this burden is not an insurmountable one. Plaintiffs "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.") (citation omitted). *See Hipp*, 252 F.3d at 1219. Moreover, "the 'similarly situated' requirement of § 216(b) is <u>more elastic and less stringent</u> than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F.3d at 1095 (emphasis added).

On the other hand, "[a] court may deny plaintiffs' right to proceed collectively if the action arises from circumstances <u>purely personal to the plaintiff</u>, and <u>not from any generally applicable rule, policy, or practice</u>." *Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 WL 2085312, at *4 (N.D. Ga. July 25, 2006) (quoting *England v. New Century Financial Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)) (emphasis added). Under Eleventh Circuit precedent, "a unified

policy, plan, or scheme of discrimination [or FLSA prohibited actions] <u>may not</u> <u>[even] be required</u> to satisfy the more liberal 'similarly situated' requirement of § 216(b)[.]" *Grayson*, 79 F.3d at 1095. (emphasis added).

Here, Plaintiffs maintain that Honda's failure to uniformly address and/or oversee compensation for non-exempt production employees at its Anniston facility to avoid uncompensated pre-shift and uncompensated meal period work is the "unified policy, plan, or scheme" that allegedly resulted in the proposed opt-in class not receiving overtime wages, in contravention of FLSA. As evidentiary support, Plaintiffs primarily point to the multitude of declarations filed into the record that substantiate the similarity of Plaintiffs' positions with that of the proposed class of opt-in plaintiffs both in terms of their job duties as well as the terms of their compensation to exclude overtime compensation for pre-shift and meal period work.

Honda counters that Plaintiffs have failed to establish a sufficient level of similarity to justify conditional certification because its group of production employees encompasses a variety of positions and each position in turn has different job duties. More particularly, Honda states:

> Plaintiffs have not even attempted to show that they are similarly situated to all 4,500 associates working at HMA's Lincoln, Alabama, facility. At best, Plaintiffs have attempted to show a similarity with Process Associates working in Assembly Frame, Paint, and PMC. More specifically, Plaintiffs have provided no evidence whatsoever that they

>are similarly situated to ESA's and associates working in departments utilizing a three-shift rotation.

(Doc. 64 at 16 (emphasis in original omitted); *see also id.* at 30 ("Plaintiffs seek to certify a large collective action covering various job positions, shifts, managers, and departments based only on generalized allegations.")). However, as noted in the introduction, Plaintiffs have now clarified that the scope of employees they seek to represent is significantly more limited than "all 4,500 associates" working for Honda and expressly do not include the categories of any Equipment Service Associates (or "ESAs") or employees working in three-shift departments. *See supra* at 2-3 n.2.

Instead, the very group of production employees that Plaintiffs do seek to represent is those associates "working in Assembly Frame, Paint, and PMC." (Doc. 64 at 16). Accordingly, much if not all of Honda's brief criticizing the overly-broad nature of the proposed collective action definition and contending that a sufficient showing of a similarity in job positions is lacking is simply inapplicable. (*See* Doc. 64 at 15-18).

Furthermore, even Honda's own description of its workforce acknowledges some degree of similarity among the proposed class of employees working in Assembly Frame, Engine Assembly, Paint, PMC, Weld, and Vehicle Quality by grouping them together in terms of scheduling and overtime requirements, as they all

10

function under a two-shift rotation. (Doc. 64 at 6).[5] Also, Honda refers to this collective group of employees as "Process Associates." (Doc. 64 at Ex. A ¶ 17). "Process Associates are required to perform processes within their respective departments related to assembly of Honda vehicles." (*Id.* ¶ 18). Further, within a

---

[5] To the extent that these particular associate positions have varying job duties, that type of difference does not render conditional certification inappropriate. The FLSA does not require symmetry of job requirements. Moreover, the presence *vel non* of individualized issues is more aptly dealt with at the decertification phase. *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1245 (11th Cir. 2008) (During the decertification stage "Family Dollar argued (1) the opt-in Plaintiffs were not similarly situated under the FLSA, <u>because their day-to-day job duties were too different</u>; (2) the executive exemption defense is inherently individualized; and (3) <u>discrepancies in the store managers' duties</u> made a collective trial impossible and unfair.") (emphasis added); *id.* at 1621 ("In *Anderson*, we also quoted approvingly of *Thiessen*, where the Tenth Circuit identified a number of <u>factors that courts should consider at the second stage</u>, such as: '(1) <u>disparate factual and employment settings of the individual plaintiffs</u>; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]' *Anderson*, 488 F.3d at 953 (quoting with approval *Thiessen*, 267 F.3d at 1103); *see also Mooney*, 54 F.3d at 1213 n. 7, 1215-16.") (emphasis added); *Morgan*, 551 F.3d at 1261-62 ("Thus, <u>at the second stage,</u> 'although <u>the FLSA does not require potential class members to hold identical positions</u>, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions' and encompass the defenses to some extent.") (citation omitted) (emphasis added); *Bolden v. Wayne Farms, LLC*, No. 5:06-CV-2096-IPJ, (Doc. 78 at 6) (N.D. Ala. July 3, 2007) (granting conditional certification over employer's objection premised upon differing plant positions with varying gear and job requirements as well as compensation practices); *Bolden*, (Doc. 47 at 20) (listing variances within proposed class including "185 different job titles; 4 different methods of recording hours worked; 4 different points of plant entry for employees coming into the plant from the parking lot; [and] 10 different sets of job-specific, required clothing and PPE").

particular department, Process Associates rotate the processes that they perform "on a daily basis for ergonomic reasons." (*Id.*). All of this description by Honda points to a sufficient degree of similarity shared between Plaintiffs and the proposed class.

Honda also challenges conditional certification on the basis that Plaintiffs have failed to demonstrate "some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular 'decision, policy, or plan.'" (Doc. 64 at 19 (citation omitted)). Once again, however, Honda emphasizes the breadth of the proposed class definition as the compelling problem: Plaintiffs' "evidence demonstrates nothing but isolated allegations of unpaid overtime among <u>a broad range of job descriptions, work schedules, and departments</u>." (*Id.* at 20 (emphasis added) (footnote omitted)).

Moreover, the court does not see where Honda's brief is directed toward any specific issues relating to the more narrow class definition that Plaintiffs have proposed in their reply brief. For example, Honda states that conditional certification is inappropriate because, with respect to preparatory activities "ESA's work schedules are not tied to the production line, and some associates rotate through three shifts, meaning there is little, if any 'pre-shift' work that can be done." (Doc. 64 at 21 (citation omitted)). However, neither ESAs nor three-shift employees are part of the proposed class as amended.

12

As for meal periods, Honda maintains that such issue is "unsuitable for a collective action because there is no indication that a single 'decision, policy, or plan' has been implemented to require associates to perform any of the varying tasks identified in Plaintiffs' supporting declarations during their meal period." (Doc. 64 at 22). Instead, Honda counters that its official stated policy makes it clear that its employees are not to work in excess of forty hours per week and they are not required to work during their meal break. (*See* Doc. 64 at Ex. A ¶ 14 & Ex. A (providing for thirty minute meal break); *see also id.* ¶ 6 & Ex. A (prohibiting associates from working off the clock)).

However, the critical FLSA inquiry <u>is not</u> so much whether those production employees are required by a company-wide rule to perform work during their meal period (or pre-shift), <u>but rather</u> whether Honda corporate has provided sufficient oversight to ensure that production employees are not working through meal periods (or pre-shift) without pay in contravention of the FLSA overtime requirements. In particular, the rules set forth in the Associate Handbook do not directly address the substance of what numerous declarants have sworn to occurs regularly for Honda production associates in practice: they repeatedly work pre-shift and during a portion of their meal period without receiving any compensation for the time expended. While the court recognizes that Honda has presented the affidavit of Robb Harris, its

Department Manager of Human Resources, in opposition to the Notice Motion, Plaintiffs' declarations successfully engage Honda's competing evidence, *see Hipp*, 252 F.3d at 1219, and on balance the Harris affidavit does not dissuade the court from deciding to conditionally certify a collective action in favor of Plaintiffs.

Additionally, Honda's arguments fail to adequately address <u>its ability to effectively enforce</u> its company-wide mandate that such practices are unacceptable under the FLSA, as evidence supporting a potentially actionable single decision, policy, or plan under the FLSA. Furthermore, within the Eleventh Circuit, evidence of a company-wide policy is not even necessary during the initial FLSA certification stage.

Accordingly, given the lenient standard it is to employ at this <u>conditional</u> stage, and the evidence detailing the similarity of job duties and pay provisions, including in particular the corporate policy of compensating production employees based upon their scheduled shift time versus actual hours worked, the court, in its discretion, determines that Plaintiffs have demonstrated a reasonable basis to conclude that the similarly situated requirement has been satisfied with respect to the limited class of non-exempt production employees within the departments of Assembly Frame, Engine Assembly, Paint, PMC, Weld, and Vehicle Quality. The court relatedly determines that the policy of judicial economy will be served by such conditional

collective action certification and that the value of this judicial economy outweighs any competing concerns over "stirring up" litigation.[6] *See Hoffmann-La Roche*, 493 U.S. at 170 ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory [or FLSA-violating] activity."); *see, e.g., Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995) ("As noted by the court in *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991), 'courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.'"), *aff'd,* 114 F.3d 1202 (11th Cir. 1997).

## III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Plaintiffs' Notice Motion pursuant to 29 U.S.C. § 216(b) is **GRANTED**;

2. The conditional collective action, as defined and modified herein, is certified for notice purposes only;

3. Plaintiffs shall file an amended proposed notice of right to opt-in to

---

[6] Honda's last section of its opposition brief argues the undue burden issue, but once again focuses on an all-encompassing class: "Plaintiffs' request that this Court certify a class of all of HMA's current and former hourly employees across all departments and job descriptions is misplace. 'No broader class is possible in the FLSA context.'" (Doc. 64 at 22 (citation omitted)). The court rejects Honda's undue burden contentions in light of the more tailored class at issue.

lawsuit and amended consent to join within fourteen days from the date this order is entered. In particular this amended proposed notice and consent to join should reflect that the collective action is limited to current and former hourly, non-exempt production employees from the following departments: Assembly Frame, Engine Assembly, Paint, PMC, Weld, and Vehicle Quality. Additionally, the amended proposed notice should omit any reference to and/or listing of individuals who have joined the litigation to date. (Doc. 62 at Ex. A at 2-3). Plaintiffs shall also email a copy of their amended proposed notice and consent form to chambers in WordPerfect format. At least five calendar days prior to the deadline for filing and emailing the amended proposed notice and consent form, Plaintiffs shall provide Honda with a copy of both documents, and the parties are ordered to work in good faith to resolve any disputes that they may have regarding the format of the amended proposed notice and consent form <u>prior to Plaintiffs' filing deadline</u>;

4.      Honda shall file and email to chambers any unresolved objections to the amended proposed notice and consent form within twenty days from the entry date of this order;

5.      Plaintiffs shall file and email to chambers their response to any unresolved objections to the amended proposed notice and consent form filed by Honda within thirty days from the entry date of this order;

6. Honda shall provide Plaintiffs with the names, last known physical addresses, and last four digits of social security numbers for all individuals in the putative FLSA collective action within thirty days from the entry date of this order;

7. Once the forms of the notice and consent to join have been finally approved by the court, then Plaintiffs shall provide notice by First Class Mail to all additional putative opt-in collective action plaintiffs; and

8. Finally, Honda will, as soon as practicable, post the notice and the consent to join in the break rooms and other common areas accessible to production associates.

**DONE** and **ORDERED** this the 6th day of April, 2009.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge